2023-12223 Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 1 of 15

E

Section 7

JURY

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORELANS**
**STATE OF LOUISIANA**

**SONDRA LEWIS**

**VERSUS**

**JOHN JAY BEAUTY COLLEGE, INC., ET AL.**

FILED:_____                                    _____
                                                          **DEPUTY CLERK**

**PETITION FOR DAMAGES**

1.

Petitioner, Sondra Lewis, is an adult resident citizen of the State of Louisiana, Parish of Orleans.

2.

Made Defendants herein are the following, either foreign corporations licensed to do and doing business in the State of Louisiana, or domestic corporations licensed to do and doing business in the State of Louisiana, for the claims asserted herein:

a. John Jay Beauty College, Inc.
b. Dorignacs Food Center, L.L.C.
c. The Wella Corporation, as successor-in-interest to Clairol Inc.
d. L'Oreal USA Creative, Inc.
e. Revlon Consumer Products Corporation

3.

Orleans Parish is a proper venue pursuant to Louisiana Code of Civil Procedure article 74 because Sondra Lewis resides in Orleans Parish and, at all relevant times, was exposed and injured in Orleans Parish.

4.

This Court has jurisdiction over all defendants pursuant to Louisiana Revised Statute 13:3201(A)(1)-(3) and (8) because they all transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed

2023-12223

E

Section 7

Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 2 of 15

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, they could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and marketing practices.

5.

This action is within the jurisdiction of the Court and Orleans Parish is a proper venue because Sondra Lewis was exposed and injured in Orleans Parish.

6.

This action is within the jurisdiction of the Court and Orleans parish is a proper venue pursuant to Louisiana Code of Civil Procedure article 73 because each of the defendants listed above contributed to Plaintiff's exposure to various hair dye components in the form of arylamines, para-aminophenols, pyrimidines, aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals that acted as primary intermediates, couplers, oxidizing agents, alkalinizing agents, or color additives in the hair dyeing process and subsequent contraction of breast cancer and therefore each is solidarily liable to Petitioner with Defendants.

7.

From 1974 until March 2023, Sondra Lewis began using at-home permanent hair dyes at every 4 to 7 weeks. The hair dyes contain arylamines, para-aminophenols, pyrimidines, aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals that acted as primary intermediates, couplers, oxidizing agents, alkalinizing agents, or color additives in the hair dyeing process. Some of the hair dyes used by Mrs. Lewis includes but are not limited to: Miss Clairol, L'Oreal Preference, L'Oreal Ferial, Garnier Nutrisse, Garnier Olia, and Revlon. At all relevant times, Mrs. Lewis and her husband purchased these products from various drug stores and grocery stores in the New Orleans metropolitan area, including Dorignacs. In the late-1980s through the 2010's, Petitioner received hair dye treatments at John Jay Beauty College salons. Mrs. Lewis never saw any written cancer warnings on the hair dye packaging. Mrs. Lewis was never provided any verbal warnings of the dangers inherent in these products. These products were and are unreasonably dangerous per se,

2023-12223 Case 2:23-cv-07160-CJB-DPC Document 1-1 Filed 12/04/23 Page 3 of 15

E

Section 7

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

defective in composition or construction, defective in design, lacked suitable warnings or instructions concerning the hazards presented, as a result of negligence, willful, and/or reckless misconduct, and as a result of the intentional misconduct of defendants.

8.

Each of the above-named defendants failed to protect Sondra Lewis from harmful exposure to various hair dye components in the form of arylamines, para-aminophenols, pyrimidines, aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals that acted as primary intermediates, couplers, oxidizing agents, alkalinizing agents, or color additives in the hair dyeing process.

9.

Dermal absorption of these hair dye chemicals through the scalp, in addition to inhalation of the fumes generated during the hair dyeing process by these chemicals, causes irreparable and progressive damage that can lead to breast cancer and other disease processes.

10.

Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioner, of the health hazards inherent in the primary intermediates, couplers, oxidizing agents, alkalinizing agents, color additives, and preservatives contained in the hair dyes they were selling and/or supplying. Instead of warning Petitioner and the general public about these dangers, the defendants ignored or actively concealed such information, or condoned such concealment, in order to sell hair dyes and to prevent the Food and Drug Administration from regulating the hair dyes and/or the component ingredients contained therein. Those defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of hair dyes and/or the component ingredients therein are specifically set forth and their conduct specifically described hereinafter, identifies other forms of specified misconduct as set out therein and similarly identified by the name of the particular defendant above the specific counts of misconduct.

11.

As a direct and proximate result of having ingested and/or otherwise having been exposed to various hair dye components in the form of arylamines, para-aminophenols, pyrimidines,

2023-12223
E
Section 7

Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 4 of 15

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals that acted as primary intermediates, couplers, oxidizing agents, alkalinizing agents, or color additives in the hair dyeing process as described in paragraphs 8-11, Sondra Lewis contracted breast cancer which was diagnosed on March 31, 2022.

12.

Because Mrs. Lewis' family does not have a history of breast and/or other cancers, Mrs. Lewis sought out genetic testing. She had genetic testing performed on October 29, 2022. On November 4, 2022, Mrs. Lewis obtained the test results and learned that she does not have any genetic predisposition to breast cancer.

13.

Because of the active concealment by some defendants of the causes and effects of exposure to hair dyes and the component ingredients therein, Petitioner has only recently discovered the cause of her injuries in March 2023 and not more than one year preceding the filing of this Petition for Damages.

**NEGLIGENCE AND STRICT LIABILITY AGAINST ALL DEFENDANTS**

14.

The Defendants were either all manufacturers, sellers, distributors, and/or providers of services using the hair dyes and/or the component ingredients therein, or represented themselves as manufacturers of same, which were expected to and did reach, including but not limited to the Dorignacs Food Center L.L.C and John Jay Beauty College, Inc.'s New Orleans stores, from which Sondra Lewis was exposed.

15.

The products manufactured, sold, distributed, supplied, and/or used by these defendants were defective, unreasonably dangerous, and unreasonably dangerous per se, to Sondra Lewis who was an intended and foreseeable user and bystander who was exposed to these products. These defects include, without limitation, the following:

a. The manufacture, sale, supply, distribution, and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b. The manufacture, sale, supply, distribution, and use of products that possess inherent and known properties that make them unreasonably dangerous by

2023-12223 Case 2:23-cv-07160-CJB-DPC Document 1-1 Filed 12/04/23 Page 5 of 15

E
Section 7

FILED
2023 NOV 03 P 01:25
CIVIL
DISTRICT COURT

presenting high potential for causing serious injury, such as breast cancer and/or other disease processes, to Plaintiff who would be foreseeably exposed to them as a result of their intended use;

c. Lack of warning or lack of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d. Lack of safety instructions or lack of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e. Failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f. Failure to test or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

g. Failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h. Failure to properly design these products when the nature of the product did not require the use of arylamines, para-aminophenols, pyrimidines, aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals, where equally suitable alternate component ingredients were readily available;

i. Defects in the composition and construction of these products;

j. Failure to recall these products;

k. Liability to Petitioner in strict liability for things in their garde, possession, custody, or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure that have cause harm to Petitioner.

16.

The defective conditions of defendants' products and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

17.

**ALLEGATIONS THAT DORIGNACS FOOD CENTER, L.L.C. IS LIABLE AS SUPPLIER OF HAIR DYES**

18.

Dorignacs, at all relevant times, supplied and sold L'Oreal, Clairol, and Revlon hair dyes that were purchased by Sondra Lewis.

2023-12223 Case 2:23-cv-07160-CJB-DPC Document 1-1 Filed 12/04/23 Page 6 of 15

E

Section 7

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

## INTENTIONAL MISCONDUCT ALLEGATIONS AGAINST L'OREAL, WELLA, AND REVLON.

19.

In the early 1970s, a very sensitive and simple bacterial test for detecting chemical mutagens was developed by Ames and others. The mutagens detected by this test include base-pair substitutions and frameshifts, among others. In 1975, with the cooperation of certain hair dye manufacturers, Dr. Ames and his colleagues tested 169 oxidative-type hair dye exposures to determine if they were mutagenic. Almost all the dyes proved to be quite mutagenic. Ames stated:

> ". . . . it appears each of the hair dye compounds we have found to be mutagenic has a high probability of proving to be a carcinogen. In addition to a potential carcinogenicity, many of the compounds that are mutagenic for bacteria may be hazardous to humans by causing mutations in the germline."

20.

In addition to the foregoing in this 1975 publication, Ames clearly addressed the prospect of future epidemiologic studies of human exposures:

> "The possible risk of cancer and of genetic abnormalities appears sufficiently large that large scale epidemiological studies should be done to determine any relationship between cancer incidence years of hair dyeing, . . ."

21.

After Ames' findings, a battery of assays to detect the genotoxicity of chemicals was developed. Several oxidative hair dye primary intermediates were tested with the aim of determining their genotoxicity, if any. These genotoxicity assays indicated that PPD and its derivatives had a genotoxic effect and may pose an important public health concern. Another assay of oxidative hair dyes demonstrated that the hair dye-DNA interaction caused DNA fragmentation and oxidation of DNA. It was deduced from these assay results that hair dye had genotoxic properties that when in its useable form could lead to penetration through the skin affecting genomic DNA.

22.

Starting in 1979, epidemiologic studies slowly started to emerge that attempted to address the risk to humans of developing cancer from exposure to oxidative hair dyes. Initially, the study

2023-12223
Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 7 of 15

E

Section 7

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

results were mostly negative, became mixed over time, and eventually demonstrated a significant breast cancer risk for African American women who used oxidative hair dyes.

23.

L'Oreal, Clairol, and Revlon knowingly exposed Petitioner to arylamines, para-aminophenols, pyrimidines, aromatic derivatives, parabens, naphthols, pyridines, hydrogen peroxide, ethanolamine, phthalates, ammonia, and other chemicals, where equally suitable component ingredients were readily available. At all times relevant thereto, these defendants were aware of the dangers inherent in exposure to same These defendants were members of trade associations which possessed medical and scientific data, along with other knowledge, which clearly indicated that these component ingredients were hazardous to the health and safety of its foreseeable users, including Sondra Lewis.

### **HAIR DYE DEFENDANTS**

24.

Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below.

25.

For all relevant times, L'Oreal, WELLA, and Revlon (Hair Dye Defendants) purchased, sold, and distributed products, which Plaintiff purchased, used, and personally applied, causing her injuries and illnesses.

26.

At all relevant times, Hair Dye Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the hair dye products.

27.

At all relevant times, the Hair Dye Defendants were not providing and still have not provided warnings to consumers of the Hair Dye products of the risk of cancer, including breast cancer.

2023-12223

E

Section 7

Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 8 of 15

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

28.

The Hair Dye Defendants are liable to Plaintiff Sondra Lewis as professional vendors of these products, and as such, because of the Defendants' size, volume of business, and merchandising practices, new or should have known of the defects of the products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

29.

The Hair Dye Defendants unsafely marketed their hair dye products as uniquely safe and non-carcinogenic, when at all relevant times, knew or should have known such claims were false and/or without adequate scientific support. As a consequence of Defendants' misrepresentations, customers and ultimate users of the products, including Petitioner, were deceived as to the true nature and extent of the health hazards posed by the Hair Dye products.

30.

The Hair Dye Defendants are liable to Plaintiff for the suffering and injuries from a disease, namely, breast cancer, caused by her foreseeable use of the Defendants' hair dye products, because the Hair Dye Defendants fraudulent misrepresentations were detrimentally relied upon by Plaintiff Sondra Lewis who then used the hair dye products from 1974 to 2023.

31.

The Hair Dye Defendants are liable to Plaintiff Sondra Lewis because they knew or should have known that the hair dye products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff Sondra Lewis' injuries including, but not limited to breast cancer and other ill health effects.

**CIVIL CONSPIRACY (Applies only to the HAIR DYE DEFENDANTS)**

32.

Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below.



**E**
Section 7

33.

The Hair Dye Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and/or conspired among themselves to cause Plaintiff's injuries, disease, and/or illnesses by exposing Plaintiff to harmful and dangerous products. The Hair Dye Defendants further knowingly agreed, contrived, combined, confederated, and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use the hair dye products or to expose her to said dangers. The Hair Dye Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use and exposure to the hair dye products.

34.

In furtherance of said conspiracies, the Hair Dye Defendants performed the following overt acts:

a. Dating back to at least the early-1970s, Defendants individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data literature and test reports which clearly indicated that use resulting from ordinary and foreseeable use of the hair dye products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously withheld this information from consumers;

   i. Withheld, concealed and suppressed said medical information regarding the increased risk of cancer.

   ii. Caused the United States Congress to exempt hair dye products from regulation by the Food and Drug Administration by way of the Hair Dye Defendants' trade and lobby associations.

c. In the early-1970's, the FDA wrote letters to the United States Congress, imploring that Congress remove hair dye products from the exemption list because the hair dye products are carcinogenic with known health hazards.

d. Despite the FDA's request that Congress that the hair dye products be removed from the exemption list, those hair dye products are still exempt from regulation today.

35.

As a result of the Hair Dye Defendants' conspiracy to withhold this important public health information from its consumers, Plaintiff was deprived of an opportunity to make an

E-Filed

9

2023-12223 Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 10 of 15

E

Section 7

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

informed decision concerning her use of and exposure to the component ingredients in the hair dye products.

36.

The Hair Dye Defendants, whether acting individually or in concert with others, violated their duty of care owed to Plaintiff and/or otherwise engaged in culpable activity against the Plaintiff.

37.

The actions and inactions of the Hair Dye Defendants independently and/or collectively constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury to Plaintiff.

38.

By reason of the above, the Hair Dye Defendants are jointly and severally liable to Plaintiff for the injuries and damages sustained by virtue of industry-wide or enterprise liability.

39.

Alternatively, the Hair Dye Defendants ae liable to Plaintiff for the injuries and damages sustained by virtue of their substantial share of the hair dye market within the area in which Plaintiff resides.

40.

As a result of the direct, foreseeable, and proximate result of the Hair Dye Defendants' breaches of implied warranties, Plaintiff Sondra Lewis purchased and used, as aforesaid, the hair dye products that directly and proximately caused Plaintiff to develop breast cancer. Sondra Lewis has incurred medical bills, lost wages, conscious pain and suffering, and other damages.

**PRE-LOUISIANA PRODUCT LIABILITY ACT PROFESSIONAL VENDOR CLAIM**

41.

For all relevant times, all Defendants purchased, sold, distributed, and/or applied the hair dye products, which Plaintiff purchased and frequently used and/or had applied to her hair and scalp from 1974 to 2023. These hair dye products caused Sondra Lewis' injuries and illnesses.

42.

2023-12223
Case 2:23-cv-07160-CJB-DPC  Document 1-1  Filed 12/04/23  Page 11 of 15
E
Section 7
FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

For all relevant times, all Defendants had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, sale, and/or providing of the application of the hair dye products.

43.

For all relevant times, all Defendants knew or should have known that the frequent use of the hair dye products significantly increases the risk of cancer.

44.

As a direct and proximate result of all Defendants' negligence, Plaintiff purchased, used, and personally, frequently, and regularly applied (and had applied) the hair dye products which caused her breast cancer; Plaintiff was caused to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

45.

All Defendants are liable to Plaintiff as a professional vendor of the hair dye products.

46.

Because of the Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said hair dye products.

47.

Further, the Hair Dye Defendants knew the specific use for which the hair dye products would be used and had unique expertise into the physical and chemical properties of the hair dye products and their health hazards. The Hair Dye Defendants unsafely marketed the hair dye products as uniquely safe and non-carcinogenic, at times when the Hair Dye Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of the Hair Dye Defendants' misrepresentations, consumers, including Plaintiff, were deceived as to the true nature and extent of the health hazard posed by the hair dye products.

2023-12223
E
Section 7

Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 12 of 15

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

48.

The Hair Dye Defendants are liable to Plaintiff for the suffering and injuries of her disease caused by her foreseeable use of the hair dye products because the Defendants' fraudulent misrepresentations were detrimentally relied upon by Plaintiff and was exposed by the hair dye products.

49.

Finally, the Hair Dye Defendants are liable to Plaintiff because they knew or should have known that the Hair Dye Products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff's injuries and other health effects.

### **PROFESSIONAL VENDOR LIABILITY AS TO JOHN JAY BEAUTY COLLEGE**

50.

Defendant, John Jay Beauty College held itself out to the public as an expert in the hair industry. Defendant knew the specific use for which the hair dye products would be used and had unique expertise into the physical and chemical properties of the hair dye products and their health hazards. Defendant marketed this expertise to the public and unsafely provided hair dye products to consumers such as Petitioner.

51.

Defendant is liable to Plaintiff for the suffering and injuries of her disease caused by its application of the hair dye products to Petitioner.

52.

Finally, Defendant is liable to Plaintiff because it knew or should have known that the Hair Dye Products, which they sold, supplied, and applied to Petitioner, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff's injuries and other health effects.

### **PUNITIVE DAMAGES (APPLIES ONLY TO HAIR DYE DEFENDANTS)**

53.

Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below.

2023-12223



Case 2:23-cv-07160-CJB-DPC   Document 1-1   Filed 12/04/23   Page 13 of 15

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

54.

The Hair Dye Defendants acted maliciously, wantonly, recklessly, and demonstrated a conscious indifference and utter disregard for the health, safety, and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

a. The Hair Dye Defendants knew of the unreasonably high risk of cancer and/or other illnesses posed by the hair dye products before manufacturing, marketing, distributing, and/or selling the hair dye products, yet purposefully proceeded with such action;

b. Despite their knowledge of the high risk of cancer associated with the hair dye products, the Hair Dye Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling, furthering the conspiracy and concerted action to conceal and/or without important public health information.

55.

As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Hair Dye Defendants, an award of punitive damages is warranted.

WHEREFORE, on the basis of all of the foregoing premises set out in paragraphs 1 through 55, Petitioner requests that Defendants be served with this Petition and that there be judgment against these defendants jointly, severally, and in *solido* in a sum sufficient to compensate Petitioner for the following:

a. All past, present, and future medical costs or expenses related thereto;
b. All past, present, and future lost earnings;
c. All past, present, and future mental suffering, anguish, pain, and suffering;
d. All past, present, and future physical pain and suffering;
e. Loss of quality of life;
f. Past, present, and future disability;
g. Punitive damages; and
h. All other forms of relief provided by law or equity together with interest from the date of injury until paid, plus costs of these proceedings.

2023-12223 Case 2:23-cv-07160-CJB-DPC Document 1-1 Filed 12/04/23 Page 14 of 15


Section 7

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

Petitioner herein demands a trial by jury pursuant to La. C.C.P. art. 1733, with the jury bond to be paid in the amount and time set by the Court pursuant to La. C.C.P. art 1734.

WHEREFORE, Petitioner prays that after due proceedings had, there be judgment herein in favor of Petitioner and against the Defendants, and each of them, jointly, severally, and/or in solido for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioners may show themselves justly entitled.

Respectfully Submitted,

*Jason Elam*

Elam Law Group LLC
Jason K. Elam (La. 34533)
650 Poydras Street, Suite 2708
New Orleans, LA 70130
Tel: (504)458-6364
Email: Jason@elamlawgroup.com

2023-12223 Case 2:23-cv-07160-CJB-DPC Document 1-1 Filed 12/04/23 Page 15 of 15

E Section 7 

FILED
2023 NOV 03  P 01:25
CIVIL
DISTRICT COURT

## PLEASE SERVE THE FOLLOWING:

**DORIGNACS FOOD CENTER, L.L.C.** may be served through its registered agent:
Edward F. Bukaty
909 Poydras Street, Suite 3150
New Orleans, LA 70112

**JOHN JAY BEAUTY COLLEGE, INC.** may be served through its registered agent:
Shelly Laiche
2844 Tennessee Avenue
Kenner, LA 70062

**THE WELLA CORPORATION,** individually and as successor-in-interest to CLAIROL INC.
The Well Corporation may be served through its registered agent:
Corporation Service Company
450 Laurel Street
Baton Rouge, LA 70801

**L'OREAL USA CREATIVE, INC.**
Pursuant to the Louisiana Long Arm Statute, L'Oreal USA Creative, Inc. may be served through its registered agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**REVLON CONSUMER PRODUCTS CORPORATION**
Pursuant to the Louisiana Long Arm Statute, Revlon Consumer Products Corporation may be served through its registered agent:
Corporate Creations Network Inc.
600 Mamaroneck Avenue, Suite 400
Harrison, NY 10528